UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| AINA Z. LAYSON | CIVIL ACTION |
| VERSUS | |
| | NO. 14-518-SDD-SCR |
| BAFFIN INVESTMENTS, LTD., ET AL. | |

### RULING

Before the Court is Baffin Investments, Ltd. and Intership Navigation, Inc.'s, *Motion to Dismiss Based on Forum Non Conveniens*.[1] In response, Aina Z. Layson has filed an *Opposition*[2] to which Baffin and Intership have filed a *Reply*.[3] For the following reasons, the *Motion* shall be granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

**A. The Fatal Accident**

This removal action involves a maritime wrongful death action brought by the widow of a deceased seaman. On October 8, 2012, Fildion R. Layson ("Layson"), a citizen and resident of the Philippines, entered into a ten month Philippine Overseas Employment Administration ("POEA") Contract of Employment with Intership Navigation Co. Ltd.,[4] to work as a bosun aboard the M/V Federal Yoshino, a Marshall Islands flag vessel, owned and operated by Baffin Investments, Ltd.[5]    The POEA Contract

---

[1] Rec. Doc. 18.
[2] Rec. Doc. 20.
[3] Rec. Doc. 23.
[4] Associated Ship Management Services, Inc. served as Intership Navigation Co. Ltd.'s "agent" or "manning agent" for the POEA employment contract. Rec. Doc. 18-2, pp. 1; 13.
[5] Rec. Doc. 18-2, pp. 1; 14. Plaintiff has alleged that Baffin Investments, Ltd "owned, operated and/or controlled the M/V Federal Yoshino." Rec. Doc. 1-2, p. 1, ¶3. In their Notice of Removal, Defendants admit being "the owner of the M/V Federal Yoshino, a bulk carrier sailing under the flag of the Marshall Islands." Rec. Doc. 1, ¶2.

1

incorporated the POEA's Standard Terms and Conditions, including a provision designating the Philippine National Labor Relations Commission ("NLRC"), or the Philippine voluntary arbitrators, as having exclusive jurisdiction over claims arising out of Layson's employment and provided that Philippine law would apply to all disputes. Section 29 of the POEA Contract provides in pertinent part as follows:

> **DISPUTE SETTLEMENT PROCEDURES**
>
> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of voluntary arbitrators.[6]

The POEA Contract also included an Addendum to the Standard Terms and Conditions Governing the Employment of Filipino Seafarers Onboard Ocean Going Vessels that Layson also executed, which provides as follows:

> <u>VENUE OF LEGAL ACTION</u>
>
> It is hereby agreed that all claims, disputes or controversies that may arise from this employment contract shall be brought by either party exclusively before the proper courts in Metro Manila.[7]

Layson's employment aboard the M/V Federal Yoshino was also subject to a collective bargaining agreement ("CBA") entered into between the Associated Marine Officers' and Seaman's Union of the Philippines ("AMOSUP"), a Philippine seaman's union, and Associated Ship Management Services, Inc., Intership's Philippine manning agent.[8] Notably, the CBA required arbitration in the Philippines of all disputes and any post-arbitration, including judicial action.[9]

---

[6] Rec. Doc. 18-2, p. 5. (emphasis original).
[7] Rec. Doc. 18-2, p. 13 (emphasis original).
[8] Rec. Doc. 3-2.
[9] Rec. Doc. 3-2, p. 12, § 13.1 (parties agree to settle through negotiation, conciliation, voluntary arbitration); p. 23, § 34.1 (required judicial action in Philippines if arbitration unsuccessful).

2

On May 8, 2013, Layson was fatally injured while working aboard the M/V Federal Yoshino in Quebec, Canada.

**B. The Philippine Settlement**

Following her husband's death, Aina Z. Layson[10] ("Plaintiff") met with representatives from Pandiman Philippines, Inc., the Philippine correspondent for the vessel's Protection & Indemnity insurer, and Associated Ship Management Services, Inc., the manning agent of Intership, to discuss the contractual benefits that she was entitled to receive based upon the POEA contract and the CBA.[11]  On January 10, 2014, Plaintiff personally appeared with several family members at Pandiman's Manila office to enter into a Settlement Agreement with Associated Ship Management Services, Inc. and Intership Navigation Co. Ltd. for $108,663.79.[12]  Before signing the settlement documents, which included a *Release of All Rights*, Plaintiff had the opportunity to review them in both English and her native language (Tagalog), and she attested under oath before a notary and witnesses that she understood them and the consequences of her act of signing them.[13]  Like the POEA Contract and the CBA, the Settlement Agreement contained a choice of law and forum selection clause which provided as follows:

---

[10] Aina Zenith U. Layson is Fildion R. Layson's widow and mother of their minor child, Zian Dion U. Layson.  Rec. Doc. 1-2.
[11] Rec. Doc. 18-2, pp. 15-16, ¶¶4-5; pp. 18-19, ¶¶3-5.
[12] Rec. Doc. 18-2, p. 16, ¶7; p. 19, ¶9.  The settlement award is represented in U.S. dollars.
[13] Rec. Doc. 18-2, p. 16, ¶7; pp. 19-20, ¶¶9-13. Rec. Doc. 18-2, pp. 25-33 (signed *Release of All Rights* in both English and Tagalog wherein Plaintiff agreed to release Associated Ship Management Services, Inc. and Intership, "and their heirs, executors, administrators, successors and assigns, and their several vessels and in particular the '**FEDERAL YOSHINO**' and the owners, agents, operators, charterers, masters, officers and crews, the underwriters and P&I Club of said vessels from each and every right and claim which [Plaintiff] now ha[d], or may hereafter have, whether arising in tort, contract, statutory law, or any other basis of recovery, on account of the death of my late husband due to **Thoracic and Abdominal Trauma**.").

3

> I agree this Release of All Rights shall in all respects be governed by the laws of the Philippines including all matters of construction and validity. I further agree that any disputes arising from this settlement agreement shall be referred to the competent court or authorities of the Philippines, to the exclusion of any other forum.[14]

At the conclusion of the first stage of the settlement proceedings, the Plaintiff, her relatives, and the representatives of Associated and Pandiman proceeded to the NLRC to finalize the settlement.[15]  At the NLRC, Plaintiff's NLRC complaint was filed and assigned to NLRC Labor Arbiter, Joel Lustria.[16]  On this same day, Arbiter Lustria conducted an arbitral proceeding in order to verity that Plaintiff had understood the content of the Settlement Agreement, its effect and the consequences for entering into said agreement, and that she freely and voluntarily agreed to the terms.[17]  Satisfied with Plaintiff's responses, the NLRC Labor Arbiter entered an order on January 10, 2014, approving the settlement and dismissing the Plaintiff's complaint with prejudice.[18]

### C. Relevant Louisiana Litigation[19]

On July 16, 2014, the Plaintiff filed a *Petition for Damages* in Louisiana State Court asserting claims under the Jones Act, 46 U.S.C. § 30104, and general maritime law of unseaworthiness against Baffin Investments, Ltd. and Intership Navigation, Inc. ("Defendants"), both foreign corporations, for their alleged negligence in the death of her

---

[14] Rec. Doc. 18-2, p. 25. (English version).
[15] Rec. Doc. 18-2, p. 16, ¶8; p. 20, ¶16.
[16] Rec. Doc. 18-2, pp. 34-35 (Complaint); p. 16, ¶9; 20, ¶18.
[17] Rec. Doc. 18-2, p. 16, ¶9; p. 20, ¶18.
[18] Rec. Doc. 18-2, p. 16, ¶9; p. 20, ¶19; p. 24 (The Order stated: "Parties appeared upon filing of this case and mutually agrees to settle their case amicably as evidenced by the ""[sic] **RELEASE OF ALL RIGHTS**" executed by the complainant duly approved by this office, after receipt in the sum of USD 108,663.79 from the respondents, representing **WHEREFORE**, let the instant case be, as it is hereby **DISMISSED** with prejudice."(emphasis original)).
[19] As this Court has previously noted, "Plaintiff previously filed a petition for Damages in the Civil District Court for the Parish of Orleans (the "Orleans Petition") against the defendants, which was removed to the U.S. District Court for the Eastern District of Louisiana.  This suit was subsequently remanded to state court and voluntarily dismissed by the plaintiff."  Rec. Doc. 24, p. 3, n. 4.

husband.[20]  Plaintiff also alleged that the Defendants fraudulently induced her to sign the Release of Rights and to accept the settlement of death benefits.[21]  The Defendants timely removed Plaintiff's lawsuit to federal court pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the Federal Arbitration Act, 9 U.S.C. § 201, *et seq.*, for the purposes of moving this Court to compel arbitration in the Philippines.

Subsequently, Plaintiff challenged the Court's subject matter jurisdiction and sought remand.  This Court denied Plaintiff's *motion* finding that the Defendants had satisfied their burden of establishing removal jurisdiction.

Now the Defendants seek dismissal of Plaintiff's lawsuit under the doctrine of *forum non conveniens*.  Defendants contend that the five forum selection clauses—one in the Settlement Agreement, two in the CBA, and two in Layson's POEA contract—are enforceable because Plaintiff cannot satisfy her burden of showing the existence of any extraordinary circumstances to relieve her from their enforcement.  Plaintiff disagrees.  Plaintiff argues that the doctrine of *forum non conveniens* is inapplicable to maritime controversies when United States law is applicable and that, even if it were applicable, the Republic of the Philippines is an inadequate alternative forum.  Plaintiff claims that the forum selection clause in the CBA is unenforceable because it runs afoul to La. R.S. 23:921(A)(3).  She also contends that, because she was fraudulently induced to sign the *Settlement Agreement*, its forum selection clause has no effect.

---

[20] Rec. Doc. 1-2, p. 3.
[21] Rec. Doc. 1-2, p. 3, ¶10. Plaintiff specifically asserted that Defendants were "guilty of fraud and the intentional infliction of emotional distress."

## II.     LAW AND ANALYSIS

Initially, the Court must determine whether the doctrine of *forum non conveniens* applies here.  Plaintiff, citing the Fifth Circuit decision, *Vaz Borralho, et al. v. Keydril Company, et al.*, asserts that the doctrine of *forum non conveniens* is inapplicable to a maritime controversy when the law of the United States is applicable.[22]  In *Vaz Borralho*, the Fifth Circuit applied a "two-prong admiralty forum non conveniens analysis" which required that the district court determine the choice of law before addressing the issue of *forum non conveniens*.  The *Vaz Borralho* court specifically held that if U.S. law applied then the district court should generally retain jurisdiction and proceed with the case.  However, this is no longer binding law within the Fifth Circuit as *Vaz Borralho* was expressly overruled on this very issue.[23]  Courts no longer use a modified *forum non convenience* analysis in any cases, including those arising under the Jones Act and involving general maritime law.[24]  Now, choice of law is just one of the many considerations in the *forum non conveniens* analysis and is not alone determinative.[25]  Based on the foregoing, the Court finds that the doctrine of *forum non conveniens* is applicable to the instant matter, and shall be applied accordingly.

---

[22] *Vaz Borralho v. Keydril Co.*, 696 F.2d 379 (5th Cir. 1983), overruled by *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987).
[23] *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1163 (5th Cir. 1987) overruled *Vaz Borralho*.  Impact of *In re Air Crash* discussed in *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1378 (5th Cir. 1988).
[24] *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987) (hereinafter "*In re Air Crash*").
[25] In *Quintero v. Klaveness Ship Lines*, the Fifth Circuit held that "*In re Air Crash* does not preclude a choice of law determination as part of a public-factors analysis made after a determination that an adequate forum is available."  914 F.2d 717, 725 (5th Cir. 1990).

**A. Validity of Forum Selection Clause**

In conducting its *forum non conveniens* analysis, the Court must first decide whether the forum selection clauses are valid.[26] "Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases."[27] Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."[28] The party challenging the enforcement of a forum selection clause bears a "heavy burden" of proving that its enforcement is unreasonable.[29] A forum selection clause may be considered unreasonable if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) the enforcement of the forum selection clause would contravene a strong public policy of the forum state.[30]

Plaintiff contends that "the forum [selection] clauses in the collective bargaining agreement and in the 'walk-in settlement' are simply not enforceable."[31]

Plaintiff argues that the forum selection clauses in Layson's POEA Contract and CBA are unreasonable because their enforcement would contravene Louisiana's strong public policy against forum selection clauses in employment contracts as codified in La. R.S. 23:921(A) (2). This statutory provision provides as follows:

---

[26] The enforceability of a forum selection clause is a question of law.
[27] *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397, at 399 (5th Cir. 2008)(quoting *Braspetro Oil Servs. Co. v. Modec (USA)*, 240 Fed.Appx. 612, 615 (5th Cir. 2007)(unpublished); see also *Haynesworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997))).
[28] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).
[29] *Haynesworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997)(quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).
[30] *Id.* at 963.
[31] Rec. Doc. 20, p. 15.

7

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil … action involving an employee, shall be null and void …[32]

The Court finds that the Fifth Circuit decision, *Lim v. Offshore Specialty Fabricators, Inc,* involving the enforcement of an international arbitration agreement in light of La. R.S. 23:921, provides some guidance on Plaintiff's public policy argument.[33]

In *Lim*, a class of Filipino seamen sought to sue their employer under the Fair Labor Standards Act ("FLSA"). Their employer sought dismissal of their claims because the Standard Terms of the POEA required arbitration in the Philippines and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") required the court to enforce said arbitration clause. The district court denied the employer's motion to dismiss, holding that the arbitration clause violated Louisiana law and its strong public policy against forum selection clauses in employment contracts. On appeal, the Fifth Circuit reversed the district court finding that La. R.S. 23:921(A)(2) did not render an arbitration clause under the Convention unenforceable, because "the strong federal policy in favor of international arbitration agreements in general, and the application of the Convention to seamen's employment contracts in particular" outweighed Louisiana's strong public policy interests against choice of forum clauses.[34] Considering "the overall balance of public policy concerns favors enforcing the arbitration agreements," the court concluded that the plaintiffs had not satisfied the "high burden of proof" necessary to show Louisiana's public policy

---

[32] La. R.S. 23:921(A)(2).
[33] *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898 (5th Cir. 2005).
[34] *Id.* at 906. See, *Sherman v. RK Restaurants Holdings, Inc.*, 2014WL 4540023at *7 (E.D.La. Sept. 11, 2014).

8

rendered the arbitration clause unreasonable.[35] Relying on *Lim,* the Court finds that Plaintiff has likewise failed to overcome her heavy burden of showing that it would be unreasonable to enforce the forum selection clauses in the POEA and CBA. Accordingly, the Court finds the forum selection clauses in the POEA and the CBA to be valid.

Plaintiff also argues that "[t]he 'walk-in settlement' was produced by fraud because Mrs. Layson was not told she had an 'action at law' and was told that to receive the contractual death benefit she was required to sign the 'walk-in settlement.'"[36] This Court recently set forth the standard for determining whether a forum selection clause was procured by fraud:

> Fraud and overreaching only invalidate a forum selection clause when the fraud and overreaching relate specifically to the clause. Allegations of fraudulent conduct concerning the contract as a whole or other contract provisions cannot render a forum selection clause unenforceable. *Haynsworth*, at 963. Nevertheless, if the facts show that the party resisting the clause was 'at the mercy of the defendant,' and the clause was obscured in the contract, fraud and overreaching will be established. *Couch v. First Guardian Ltd.*, 578 F.Supp. 331, 334 (N.D.Tex. 1984). However, this exception to the clause's presumption of validity should not be read as meaning that the clause is unenforceable anytime a dispute arising out of the agreement is based on potential fraud. *Scherk v. Alberto-Culver Co.*, 417 US. 506, 519 n. 14 (1974).[37]

Plaintiff has not offered any evidence showing that the Defendants fraudulently induced her to agree to the forum selection clause within the Settlement Agreement. Her allegation of fraud relates to the Settlement Agreement in its entirety, not the forum selection clause itself.[38] Moreover, the language of the clause is unambiguous and clear and was presented to the Plaintiff in both English and Tagalog. Additionally, a

---

[35] *Id.*
[36] Rec. Doc. 20, p. 15.
[37] *Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, 2014 WL 4986674, *2 (M.D.La. Sept. 29, 2014).
[38] Rec. Doc. 3-14.

9

separate Labor Arbiter found that the Plaintiff knew the content of the settlement documents, their effect, and that she had voluntarily and freely accepted their terms. Accordingly, the Court finds that Plaintiff's allegations of fraud are without merit. As such, the Court finds that the forum selection clause in the Settlement Agreement is valid.

### B. Enforcement of the Forum Selection Clauses

Having determined that the forum selection clauses are valid, the next inquiry for the Court is whether they should be enforced.

The United States Supreme Court in *Atlantic Marine Const. Co. Inc. v. U.S. Dist. Court for W. Dist. of Tex.* held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*"[39] According to *Atlantic Marine,* "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum."[40] The traditional *forum non conveniens* framework involves four considerations. "First the district court must assess whether an alternative forum is available."[41] "Second, the district court must decide if the alternative forum is adequate."[42] Should the court determine that the alternative forum is adequate

---

[39] *Altantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, et al.*, 134 S.Ct. 568, 580 (2013)(hereinafter *Atl. Marine*). Although *Atlantic Marine* did not distinguish between mandatory and permissive forum selection clauses, the Fifth Circuit recognizes such distinctions. See, *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501 (5th Cir. 2004). *Atlantic Marine* involved a mandatory forum selection clause. Atl. Marine, 134 S.Ct. at 575 and n.5. Like the clauses in *Atlantic Marine*, the forum selection clauses in the instant matter include similar mandatory language (ie., "shall"). Hence, the *Atlantic Marine* analysis is further warranted in this case.
[40] *Id.*
[41] *Mendez v. Submar, Inc.*, 2013 WL 4787776, at *2 (S.D.Tex. Sept. 9, 2013)(citing *In re Air Crash*, 821 F.2d at 1165).
[42] *Id.* (*citing Gonzalez v. Chrysler Corp.*, 301 F.3d 371, 379 (5th Cir. 2002)).

and available, then "it next must weigh various private interest factors."[43]  "If consideration of these private interest factors counsel against dismissal, the district court moves to the fourth consideration in the analysis, namely consideration of the public interest factors."[44]  However, the Supreme Court modified this analysis in *Atlantic Marine* where the parties' dispute involves a forum selection clause.[45]

First, unlike the ordinary *forum non conveniens* analysis, "the plaintiff's choice of forum carries no weight."[46]  Therefore, the district court "should not consider arguments about the parties' private interests."[47]  Instead, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum."[48]  "As a consequence, a district court may consider arguments about public-interest factors only."[49]  Ultimately, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."[50]

### 1. Is the Philippines an Adequate, Available Forum

"A foreign forum is available when the entire case and all the parties can come within that forum's jurisdiction.  A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the benefits of an American court."[51]  Additionally, "[t]he substantive law of the foreign forum

---

[43] *Id.* (citing *Gonzalez*, 301 F.3d at 380).
[44] *Id.* (citing *In re Air Crash*, 821 F.2d at 1162 (5th Cir. 1987)(en banc), vacated on other grounds sub nom., *Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989)).
[45] *Atl. Marine*, 134 S.Ct. at 581. (The Court noted that "[t]he calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" (quoting *Stewart Org., Inc. v. Ricoh Corp., et al.*, 487 U.S. 22, 31, 108 S.Ct. 2239, 101 L.Ed. 2d 22 (1988)).
[46] *Id.*
[47] *Id.* at 582.
[48] *Id.*
[49] *Id.*
[50] *Id.* at 583.
[51] *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007)(internal and external citations omitted).

11

is presumed to be adequate unless the plaintiff makes some strong showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there."[52] The Fifth Circuit has further instructed that "[d]istrict courts do not have to start from scratch each time they consider a forum's availability; if we have found a forum to be available in earlier cases, district courts may rely on our precedent in similar cases to hold that it is still available."[53]

Plaintiff argues that the Philippines is an inadequate alternative forum because the subject matter of this dispute is a maritime death action brought under the general maritime law of the United States. Plaintiff also argues that Philippine administrative bodies, the NLRC, and voluntary arbiters will only apply the laws of the Republic of the Philippines without considering the laws of any other country, including the United States. Defendants argue that the Fifth Circuit has expressly endorsed the resolution of Filipino seamen's claims in the Philippines under Philippine law; therefore, the Court may rely on these earlier decisions in finding the Philippines to be an available forum. In the alternative, the Defendants argue that maritime choice of law principles permit the application of Philippine law making it an appropriate forum.

Defendants cite several Fifth Circuit decisions where the court ordered that the Filipino seamen's claims be arbitrated pursuant to the POEA or under Philippine law.[54] For instance, in *Lim*, defendant sought enforcement of an arbitration agreement under

---

[52] *Id.* at 796 (quoting *Tjontveit v. Den Norske Bank ASA*, 997 F.Supp.799, 805 (S.D.Tex. 1998)(citing *Empresa Lineas Maritimas v. Schichau-Unterweser*, 955 F.2d 368, 372 (5th Cir. 1992)).
[53] *In re Ford Motor Co.*, 591 F.3d 406, 413 (5th Cir. 2009).
[54] *Francisco v. STOLT Achievement MT*, 293 F.3d 270 (5th Cir. 2002)(Fifth Circuit upheld district court finding that Filipino seaman's claims were subject to arbitration in the Philippines pursuant to Section 29 of the POEA and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998).

12

the POEA where plaintiffs, a class of Filipino seaman, had initially filed suit against their employer asserting Fair Labor Standard Acts ("FLSA") claims.[55]  In denying the defendant-employer's motion to dismiss for lack of subject matter jurisdiction and improper venue, the district court found that the arbitration clause violated Louisiana law, "which signaled a strong public policy against a forum selection clause in an employment contract and rendered the clause unenforceable."[56]  The Fifth Circuit reversed the district court's decision.  In its analysis, the Fifth Circuit placed great emphasis on the role and purpose served by the NLRC.  The *Lim* court noted "that the NLRC, the Philippine body charged with arbitrating employment claims under Standard Terms § 29, is statutorily empowered to have 'original and exclusive jurisdiction to hear and decide … the claims arising out of an employer-employee relationship or by virtue of *any law* or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages.' "[57]  Therefore, the court concluded that it was unnecessary to conclude that the NLRC could not consider an action arising under the FLSA, if the statute was applicable to plaintiff's claims.

In response, Plaintiff initially points to the decision issued by the Philippine NLRC arising out of the *Lim* decision, in which the NLRC initially found the plaintiff's claims had prescribed and further explained that it could not "entertain any claim other than for those provided for in the POEA Standard Contract of Employment and under applicable Philippine law."[58]

---

[55] *Lim*, supra note 33.
[56] *Id.* at 901.
[57] *Id.* at 908 (emphasis original).
[58] Rec. Doc. 20-5, pp. 12-13.

Plaintiff further contends that the Fifth Circuit decisions relied upon by Defendants are outdated and that a recent case from the Eastern District of Louisiana demonstrates that the Philippines is an inadequate forum.[59]  The Court disagrees.

Unlike the pending matter, the issue before the *Asignacion* court was whether it should enforce the arbitration award rendered by the Philippines arbitration panel.  The arbitration panel refused to apply U.S. or Marshal Island law, and found the plaintiff, a Filipino seaman who had sustained severe burns to 35% of his body while on a vessel docked in the Port of New Orleans, was only entitled to a lump sum of $1,870.[60]  The district court held that to enforce the arbitral award would violate U.S. public policy protecting seamen, because under Philippine law, the plaintiff would be denied the "opportunity to pursue the remedies to which he was entitled as a seaman."[61]  On appeal, the Fifth Circuit reversed the district court's decision.[62]  Initially, the *Asignacion* court turned its attention to the plaintiff's argument that U.S. public-policy requires adequate remedies under Philippine law, requiring foreign arbitration panels give seaman adequate choice of law determinations, instead of relying on choice-of-law provisions within seamen's contracts.  On this ground, the Fifth Circuit explained that "[a]pplying Philippine law to a Filipino seaman in Philippine arbitration, by itself, is not cause for setting aside the award, even if American choice-of-law principles would lead to the application of another nation's laws."[63]  After considering whether the Convention on the Recognition and Enforcement of Foreign Arbitral Awards' public policy defense

---

[59] *Asignacion v. Rickmers Genoa Schiffahrts* 2014 WL 632177 (E.D. La. 2014).
[60] *Id.* at *2. In addition to severe burns, the district court found that the Filipino plaintiff suffered problems with "his body-heat control mechanism", and "experienced the formation of multiple skin ulcerations and sexual dysfunction." *Id.* at *9.
[61] *Id.* at *10.* Specifically, "maintenance and cure, negligence, and unseaworthiness."
[62] *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft MBH & CIE KG*, 783 F. 3d 1010 (5th Cir. 2015), *petition for cert.* filed, (U.S. Sept. 10, 2015)(No.15-305).
[63] *Id.* at 1016.

14

applied, the Fifth Circuit further explained that, considering the arbitral panel's findings and the district court's failure to make any evidentiary findings as to the inadequacy of the arbitral award, the district court had erred in finding that the plaintiff's award violated U.S. public policy.  The Fifth Circuit's decision in *Asignacion* offers no support for Plaintiff's contention that the Philippines is an inadequate and unavailable forum.

Plaintiff also cites the District Court of Maryland decision, *Aggarao v. MOL Ship Management Co., Ltd.*, in an attempt to show that the Philippines is an inadequate forum.[64]  The Court, once again, disagrees.  As an initial matter, the *Aggarao* decision is non-binding on this court as it arises out of the Fourth Circuit.  However, even if it were, the *Aggarao* decision is factually and procedurally distinguishable from the instant matter.  In *Aggarao,* the plaintiff Filipino seaman filed a federal lawsuit against several defendants after sustaining severe injuries aboard their sea vessel.  The plaintiff was required to arbitrate his claims against the defendants pursuant to the POEA Contract, while the district court "retain[ed] jurisdiction pending the outcome of the arbitration proceedings."[65]  Ultimately, the NLRC arbiter rendered a decision awarding the plaintiff $89,100 in disability benefits and 240 days of "sick pay."  Subsequently, the plaintiff filed a motion to vacate the arbiter's decision while the defendants filed a cross motion seeking the enforcement of the arbiter's decision.  One of the arbiter's preliminary findings in *Aggarao* was that the plaintiff had failed to provide sufficient proof that U.S. law applied to his claims for unpaid wages, contractual compensation benefits, lost future wages, maintenance and cure, moral and exemplary damages, and attorney's fees and interest.  Therefore, the arbiter applied Philippine law to all of plaintiff's claims

---

[64] *Aggarao v. MOL Ship Management Co., Ltd., et al.*, 2014 WL 3894079 (D.Md. Aug. 7, 2014).
[65] *Id.* at *1.  The *Aggarao* court explained that the plaintiff might be able to challenge his arbitration award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

15

against the defendants. Based on the arbiter's decision, the plaintiff argued that he was denied of his opportunity to vindicate his U.S. general maritime rights and denied an adequate remedy, and that the "arbiter's failure to address his legitimate interest in the enforcement of U.S. general maritime law empower[ed] [the district court] to refuse to recognize and enforce the arbitration award as violative of U.S. public policy."[66]  To evaluate *Aggarao*'s argument, the court first determined what *Aggarao*'s rights were under U.S. general maritime law, and then whether he had been able to effectively vindicate those rights during the arbitration proceedings in the Philippines.

Unlike the *Aggarao* decision, however, in this case, the parties entered into a Settlement Agreement subject to the laws of the Philippines.  An additional distinguishing factor is that there has been no decision rendered by an arbiter or arbitration panel as to whether U.S. law would apply to any of Plaintiff's claims, assuming without finding, that Plaintiff's Settlement Agreement may be invalidated. Therefore, the Court finds that *Aggarao* is distinguishable from the pending matter.

Ultimately, the Court finds that the Plaintiff has not satisfied her burden of showing that the Philippines is an inadequate and unavailable forum.  A forum is adequate when "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American Court."[67]  In this case, Plaintiff not only submitted to the jurisdiction of the Philippines' NLRC, but she also entered into a Settlement Agreement for $108,663.79 and has admittedly received these funds.  The evidence further shows that, under Philippine

---

[66] *Id.* at *8.
[67] *Gonzales v. Chrysler Corp.*, 301 F.3d 377, 379-80 (5th Cir. 2002)(quoting *In re Air Crash*, 821 F.2d at 1165, reinstated except as to damages by *In re Air Crash Disaster Near New Orleans, La.*, 883 F.2d 17 (5th Cir. 1989)(en banc).

16

law, the Plaintiff will have the ability to challenge the validity of the parties' Settlement Agreement.[68]  If she is successful, then the NLRC "and/or the voluntary arbitrator or panel of voluntary arbitrators will have jurisdiction to hear and consider whatever additional claims she may have arising out of her husband's death under the POEA contract, the [CBA] and/or at law."[69]  Defendants refer the Court to Plaintiff's own expert who attested to the fact that Philippine maritime laws are "virtually identical to those of the United States and that Philippine law frequently looks to [the] United States for precedence in its decisions."[70]  Therefore, the Court finds that the Philippines is an adequate and available forum for the Plaintiff and her claims.

### 2. Public Interest Factors

In light of *Atlantic Marine*, any arguments regarding private interest factors carry no weight in the Court's *forum non conveniens* analysis.  Instead, the Court immediately turns its attention to any arguments raised by the parties regarding public interest factors.  The Fifth Circuit recently delineated these public interest factors as follows: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."[71]  Additionally, "[t]he plaintiff's choice of forum will not be given any weight, unlike in the ordinary [forum non conveniens] context."[72]  The party who violated the forum selection clause by filing suit

---

[68] Rec. Doc. 18-2, p. 39, ¶12.
[69] Rec. Doc. 18-2, p. 40, ¶14.
[70] Rec. Doc. 20-3, p. 5, ¶10.  Plaintiff's expert. Jesus S. Silo, also opined that "[a]lmost all of [the Philippine admiralty laws], including the provisions of [the Philippine] Civil Code on common carriers, are of American or Anglo-American origin."
[71] *In re Lloyd's Register North America, Inc.*, 780 F.3d 283, 293-94 (5th Cir. 2015)(quoting *Atl. Marine*, 134 S.Ct. at 581, n. 6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 N. 6, 102 S. Ct. 252, 70 L.Ed.2d 419 (1981)).
[72] *In re Lloyd's Register North America, Inc.*, 780 F.3d at 294 (citing *Atl. Marine,* 134 S.Ct. at 581).

17

in a different forum bears the heavy burden of showing that the public interest factors "overwhelmingly disfavor a transfer."[73]

In her opposition memorandum, Plaintiff argues that, "[b]ecause there is no adequate, available alternative forum, consideration of the 'public interest' and private factors' … should not be considered."[74]  Hence, Plaintiff fails to address or set forth any argument regarding the *Atlantic Marine* public interest factors in her brief.  In spite of this omission, the Court will briefly address each of the three public interest factors.

Considering the first two public interest factors, the Court finds that, while administrative factors and court congestion is a neutral point, the second and third factors weigh heavily in favor of the Philippines.  First, the Court finds that the Philippines has a strong interest in having this matter resolved in the Philippines.  For instance, the POEA, the NLRC, and other governmental agencies were created by the Philippines' government "to promote and regulate the overseas employment of Filipino seafarers."  Additionally, the Fifth Circuit recently recognized that the "[a]rbitration of all claims by Filipino overseas seafarers is an integral part of the POEA's mandate to promote and monitor the overseas employment of Filipinos and safeguard their interest."[75]  Furthermore, considering that Plaintiff has alleged that she was fraudulently induced into entering a settlement agreement that was negotiated by the parties, entered into in the Philippines, and approved by the NLRC, the Philippines has an even greater public interest in having such a legal challenge resolved at home.  As for the

---

[73] *Atl. Marine*, 134 S.Ct. at 583.
[74] Rec. Doc. 20, pp. 14-15.
[75] *Asignacion*, 783 F.3d at 1018 (5th Cir. 2015)(quoting *Balen v. Holland America Line, Inc.*, 583 F.3d 647, 651 (9th Cir. 2009)); *see also*, *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221 n. 25 (5th Cir. 1998)("The effect of the POEA intervention in employment contracts is to shift the balance of power slightly in favor of the employee in much the same way that a labor union or legislative enactment of minimum work standards increases the level of protection for employees in the United States.").

third public interest factor, the relevant contractual provisions at issue in this case contain choice of law provisions that provide that the laws of the Philippines would govern the construction and validity of such documents.  For this reason, and the fact that the Court has already concluded that the Philippines provides an adequate and available forum, the Court finds that the law of the Philippines will control the legal dispute at issue in this case.[76]   Therefore, the public interest factors weigh in favor of dismissal on *forum non conveniens* grounds.

### III.    CONCLUSION

Wherefore, Baffin Investments, Ltd. and Intership Navigation, Inc.'s *Motion to Dismiss Based on Forum Non Conveniens*[77] is hereby GRANTED and this matter is dismissed without prejudice.

**IT IS FURTHER ORDERED** that a proposed order of dismissal, approved as to form by all parties, shall be submitted to the Court by October 16, 2015.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on September 18, 2015.

*/s/ Shelly D. Dick*
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[76] In *Marnavi Splendor GMBH & Co. KG v. Alstom*, the district court for the Southern District of Texas explained that when "deciding a *forum non conveniens* dismissal, and neither party has provided an in-depth analysis of the eight [*Lauritzen*] factors" the court need not conduct a *Lauritzen* choice of law analysis before ruling on a motion for *forum non conveniens*. 706 F.Supp.2d 749, 758-59 (S.D.Tex. 2010). In this case, neither party has provided an in-depth analysis of the eight *Lauritzen* factors; therefore, the Court declines conducting such a *Lauritzen* choice of law analysis at this juncture.
[77] Rec. Doc. 18.